| | |
|---|---|
| Lloyd Daniels </br>Name </br></br> 77358 </br>Prison Number </br></br> UNITED STATES DISCIPLINARY BARRACKS </br></br> FT. LEAVENWORTH, KS </br>Place of Confinement | ) </br>) </br>) </br>) </br>) </br>) </br>) </br>) </br>) </br>) |

FILED

FEB - 4 2008

Clerk, U.S. District Court
By: _____ Deputy Clerk

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

United States of America,

    v.

_____, Movant

(Your Name if Rule 35 Motion)


Lloyd Daniels, Petitioner

(Your Name if Habeas Corpus Petition)

    v.

COL Mark S. Inch, Respondent(s)
Commandant, USDB        et. al.


Name of warden, jailor or authorized person having custody of petitioner. [If attacking a state detainer, fill in the name of the court issuing the detainer and/or title of prosecuting officer for that jurisdiction.])

CASE NO. 08-3041-RDR
(To be supplied by the Clerk)

(CHECK ONE)

[ ] MOTION TO REDUCE OR CORRECT SENTENCE PURSUANT TO RULE 35, FEDERAL RULES OF CRIMINAL PROCEDURE (Complete questions 1-19 ONLY)

[X] PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN FEDERAL CUSTODY (Complete questions 1-19 ONLY)

[ ] PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON ATTACKING A STATE DETAINER (Complete questions 20-28 ONLY)

1) Name and location of the court which entered the judgment of conviction or sentence under attack:
   Tried at Caserma Ederle, Vicenza, Italy before a general court-martial

2) Date judgment of conviction was entered or sentence imposed   1 February 2001
3) Case Number    General Court Martial Order Number 1

XD-2 8/82    MOTION TO REDUCE, CORRECT SENTENCE (RULE 35), PETITION FOR WRIT OF HABEAS CORPUS BY PERSON IN FEDERAL CUSTODY OR ATTACKING A STATE DETAINER (28 U.S.C. § 2241)

- 1 -

4) Length and terms of sentence   Reprimand, reduction to E-1, total forfeitures, a dishonorable discharge, and 20 years confinement. On 22 October 2001, the convening authority approved findings and sentence adjudged, but directed that execution of that part of the sentence that adjudged confinement in excess of 16 years be suspended for four years, at which time, unless the suspension is sooner vacated, the suspended part of the sentence would be remitted without further action.

5) Are you presently serving a sentence imposed for a conviction other than the conviction or sentence under attack?

   Yes [ ]   No [X]

6) Name of judge who imposed sentence under attack in this motion:
   Colonel Kenneth H. Clevenger

7) Nature of the offense or offenses involved (All counts)
   Charge I, Article 125, UCMJ: Sodomy on a child under the age of 16.
   Charge II, Article 134, UCMJ:
   Specification 1: Indecent acts on a child under the age of 16.
   Specification 2: Soliciting another to commit indecent acts upon his 10-year old stepdaughter.
   Specification 3: Adultery
   Specification 4: Knowingly receiving in foreign commerce by computer visual depictions of minors engaging in sexually-explicit conduct.
   Charge III, Article 92, UCMJ: Specification: Violation of DoD 5500-7R "by using government computer and government-provided Internet access and e-mail account for viewing, downloading, transferring, sending, and receiving visual depictions of minors engaging in sexually-explicit conduct, visual depictions of persons engaging in sexually-explicit conduct, and visual depictions of persons engaging in sexually-explicit conduct with animals".
   Charge IV, Article 107, UCMJ: Specification: False official statement (Charges withdrawn prior to pleas)
   Additional Charge, Article 134, UCMJ: Specification: Possession of computer disks and media with images of child pornography.

8) What was your plea? (Check one)

   Charge I
   a) Not Guilty [X]         b) Guilty [ ]         c) Nolo contendre [ ]

   Charge II, Specification 1
   b) Not Guilty [X]         b) Guilty [ ]         c) Nolo contendre [ ]

   Charge II, Specification 2
   c) Not Guilty [X]         b) Guilty [ ]         c) Nolo contendre [ ]

   Charge II, Specification 3
   d) Not Guilty [ ]         b) Guilty [X]         c) Nolo contendre [ ]

   Charge II, Specification 4
   e) Not Guilty [ ]         b) Guilty [X]         c) Nolo contendre [ ]

   Charge III
   f) Not Guilty [ ]         b) Guilty [X]         c) Nolo contendre [ ]

Charge IV
g) Not Guilty ☐        b) Guilty ☐        c) Nolo contendre ☐

Additional Charge
h) Not Guilty ☐        b) Guilty ☒        c) Nolo contendre ☐

9) If you entered a plea of guilty pursuant to a plea bargain, state the terms and conditions of the agreement:
   N/A

10) If you were found guilty after a plea of not guilty, was the finding made by: (Check one)

    a) A Jury ☒        b) A judge without a jury ☐

11) Did you testify at trial (if any)?
                                    Yes ☐        No ☒

12) Did you appeal from the judgment of conviction?
                                    Yes ☒        No ☐

13) If you did appeal, answer the following:
    a) Name of the Court: United States Army Court of Criminal Appeals
    b) Result  The findings of guilty to Specification 4 of Charge II and to the Additional Charge and its Specification were set aside and Specification 4 of Charge II and the Additional Charge and its Specification were dismissed. The remaining findings of guilty were affirmed.
    c) Date of result  26 July 2006

    a) Name of the Court: United States Court of Appeals for the Armed Forces, 64 M.J. 431
    b) Result  The court concluded that any error that the Appellant was denied his due process right to speedy post-trial review and appeal was harmless beyond a reasonable doubt.
    c) Date of result  12 February 2007

    a) Name of the Court: United States Court of Appeals for the Armed Forces
    b) Result  Petition for Reconsideration of the 12 February 2007 ruling was denied.
    c) Date of result  21 May 2007

    a) Name of the Court: Supreme Court of the United States
    b) Result  Petition for Writ of Certiorari was denied.
    c) Date of result  25 June 2007

    a) Name of the Court: United States Army Court of Criminal Appeals
    b) Result  Petition for Extraordinary Relief in the nature of a Writ of Mandamus was denied.
    c) Date of result  3 July 2007

    a) Name of the Court: United States Army Court of Criminal Appeals
    b) Result  Petition for Reconsideration of the 3 July 2007 ruling was denied.
    c) Date of result  7 August 2007

    a) Name of the Court: United States Court of Appeals for the Armed Forces

    b) Result  Petition for Extraordinary Relief in the nature of a Writ of Mandamus was denied.
    c) Date of result  16 November 2007

14) If you did not appeal, explain briefly why you did not:  N/A

15) Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions pursuant to 28 U.S.C. § or Rule 35, Fed.R.Crim.P. with respect to this judgment in any federal court?

    Yes [ ]   No [X]

16) If your answer to question 15 is "Yes", give the following information: N/A
    a) (1) Name of the Court   N/A
       (2) Nature of proceedings   N/A
       (3) Issues raised   N/A

       (4) Did you receive an evidentiary hearing on your petition, application, or motion?  N/A

         Yes [ ]   No [ ]

       (5) Result  N/A
       (6) Date of result  N/A
       (7) Did you appeal the result to the federal appellate court having jurisdiction?  N/A

         Yes [ ]   No [ ]

       If you did appeal, give the name of the court where the appeal was filed, the result, the case number, citation and the date of the court's decision (or attach a copy of the court's order or opinion).
       N/A

       (8) If you did not appeal, briefly explain why you did not.  N/A

    c)  As to any third petition, application or motion, give the following information:
       (1) Name of the court   N/A
       (2) Nature of proceedings   N/A
       (3) Issues raised   N/A

       (4) Did you receive an evidentiary hearing on your petition, application, or motion?  N/A

         Yes [ ]   No [ ]

       (5) Result  N/A
       (6) Date of result  N/A
       (7) Did you appeal the result to the federal appellate court having jurisdiction?

         Yes [ ]   No [ ]

       If you did appeal, give the name of the court where the appeal was filed, the result, the case number, citation and the date of the court's decision (or attach a copy of the court's order or opinion).

N/A

(8) If you did not appeal, briefly explain why you did not. N/A

b) As to any second petition, application or motion, give the following information:
(1) Name of the court N/A
(2) Nature of proceedings N/A
(3) Issues raised N/A

(4) Did you receive an evidentiary hearing on your petition, application, or motion? N/A

Yes ☐   No ☐

(5) Result N/A
(6) Date of result N/A
(7) Did you appeal the result to the federal appellate court having jurisdiction? N/A

Yes ☐   No ☐

If you did appeal, give the name of the court where the appeal was filed, the result, the case number, citation and the date of the court's decision (or attach a copy of the court's order or opinion). N/A

(8) If you did not appeal, briefly explain why you did not. N/A

17) State concisely every ground on which you claim that you are being unlawfully held or that your sentence is imposed an illegal manner or should be reduced.

A) (1) Ground One: THE PETITIONER'S PLEAS TO TWO OF THE CHILD PORNOGRAPHY CHARGES WERE IMPROVIDENT BECAUSE 18 U.S.C. §§ 2256(8) (B) and (D) WERE LATER FOUND TO BE UNCONSTITUTIONAL.

(2) Supporting Facts: The petitioner pleaded to three specifications that involved alleged child pornography (Charge II, Specification 4; Charge III and its Specification; the Additional Charge and its Specification). The *Care* inquiry never addressed whether the images at issue were "photographs of actual people."

B) (1) Ground Two: IT WAS PLAIN ERROR TO ADMIT ALISHA'S STATEMENT TO CID INTO EVIDENCE, OR IN THE ALTERNATIVE, PETITIONER WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL.

(2) Supporting Facts: The Petitioner was convicted of indecent acts and attempted sodomy with his minor stepdaughter, Alisha. He pleaded not guilty to the charges involving her. With there being no eyewitnesses with respect to these allegations, her testimony was essential to the government, and she necessarily testified at the trial. She was cross-examined, of course, but it is fair to say that her testimony was hardly a model of certainty and, not surprisingly, the government sought to buttress it. They did so by offering evidence claiming to show a connection between pornography and sexual offenses, as well as testimony seeking to explain why a child victim might present uncertain testimony.
But the government also offered an out-of-court statement that Alisha gave to a CID agent thousands of miles from the scene of the alleged offenses – and many months later. The statement was certainly damaging in its content, as it tended to buttress her in-court testimony, and beyond that, as an exhibit, it would be in the jury room

during deliberations. The only inconsistency between Alisha's in-court and out-of-court statements had to do with penetration. As Judge Clevenger commented, "Courtroom testimony, no penetration. Agent Nichols, penetration." The defense consented, however, to a government-requested prior *consistent* statement instruction, and did not seek an instruction on prior *in*consistent statements. Defense counsel had no objection when the judge indicated that he would instruct the members that they "may also consider the prior consistent statement as evidence of the truth of the matters expressed therein because that the defense's view...." The members were giving the statement.

The admission of Alisha's statement to CID was first taken up in an R.C.M. 802 conference. When asked by the clearly puzzled trial judge about the absence of objection, the trial defense counsel refused to furnish an explanation, but simply asserted that the defense was allowing the document in for tactical reasons. In the absence objection, and despite the fact that the statement – taken not by a medical provider but, rather, by a law enforcement official, over six months after and thousands of miles from the situs of the events alleged – was blatant hearsay and plainly not within any exception to the hearsay rule, the judge allowed it in. Of note, in the course of direct examination the government referred to the fact that Alisha had given a statement to CID, but asked no questions about what it said, did not show it to her on the stand or read from it, and never offered in evidence. Inexplicably, the defense never objected to this line of questioning. When the assistant trial counsel pursued the details of the CID interview, defense counsel's only objection was to the form of a question, which she incorrectly thought to be leading. Prodded by Judge Clavenger, she withdrew even that objection (and apologized for having made it). The redirect resumed, in the course of which specifics from the statement were verified by the witness on the stand, again without objection. At that point, the defense spent more time trying to show, on re-cross, that the CID agent had influenced the statement. Assistant trial counsel proceeded on further redirect to extract from Alisha an assertion that the statement she gave to CID was true.

When the time came for argument on findings, defense counsel referred to the statement Alisha gave to CID, but made no effort to suggest that it was inconsistent with her in-court testimony. Rather, the focus was on trying to show that the statement was more the work of the CID agent that it was of Alisha, *something there would have been no need to do if the statement were not in evidence in the first place*. Even in her closing paragraph, defense counsel made no effort to show that the statement to CID was inconsistent with Alisha's testimony in open court.

C) (1)   Ground Three: THE MILITARY JUDGE IMPROPERLY PERMITTED AN FBI AGENT TO GIVE WHAT PLAINLY AMOUNTED TO PROFILE EVIDENCE BY TESTIFYING AS AN "EDUCATIONAL" WITNESS.

   (2)   Supporting Facts: The centerpiece of the government's case was not one of the putative victims or anyone else with direct personal knowledge of the facts underlying the contested charges. Rather, it was James T. Clemente, an FBI agent assigned to the Behavioral Analysis Unit. Over defense objection he was permitted to testify as an "educational witness" about so-called typology of child sexual offenders, and in that connection was permitted to use, as a sort of litigative training aid, a PowerPoint presentation that was fashioned to teach law enforcement and health care personnel. Agent Clemente is an attorney. He previously served as an Assistant Corporation Counsel of the City of New York, a prosecution position. He has no advanced degree other than his law degree and has neither a degree nor extensive training in psychology. He inherited the mantle of responsibility for training in child sex offender cases from another FBI employee, but he, himself, has not contributed to the literature. There is no license or test for designation as a "criminal behavorialist," nor is there an independent standard-setting body. He is unaware of any organization outside the FBI that has endorsed his theory as valid. He has not compiled statistics.

The thrust of Agent Clemente's testimony and PowerPoint presentation was to establish a matrix of behaviors displayed by child sex offenders. He had never testified before as an expert. Although, "it's not possible to accurately predict behaviors," he testified, "we look at risk factors." Judge Clevenger permitted him to opine on "sexual offender behavior and child victimology." Although earlier cautioned not to testify about whether a risk is high or low, Agent Clemente nonetheless was permitted to testify about probabilities. Despite his lack of expert qualifications in psychology, he was also permitted to testify about the "needs" of offenders.

I respectfully invite the Court's attention to Agent Clemente's testimony in its entirety. It must be read through,

with one eye on the PowerPoint presentation to which it was inextricably tied, in order to fully appreciate the error of permitting him to testify. Because of the nature of his testimony and how it unfolded, focusing on snippets would create a greater than usual risk of misleading the reader.

D) (1)     Ground Four:   THE MILITARY JUDGE ALSO IMPROPERLY PERMITTED AGENT CLEMENTE TO TESTIFY ON SENTENCING

   (2)     Supporting Facts:  Over objection, the military judge permitted Agent Clemente to testify during the sentencing phase of the trial regarding the effects of use of the Internet in the dissemination of pornography, including the creation of worldwide demand.

E) (1)     Ground Five:  THE MILITARY JUDGE MISTAKENLY PERMITTED TESTIMONY ABOUT THE SO-CALLED CHILD SEXUAL ABUSE ACCOMMODATION SYNDROME.

   (2)     Supporting Facts:  The military judge permitted testimony on the so-called Child Sexual Abuse Accommodation Syndrome by Lt. Col. Christopher M. Revis, and Air Force clinical psychologist. The core of his testimony was that Alisha exhibited certain behaviors – such as delayed reporting, shame and powerlessness – that go with that alleged "syndrome."  That "syndrome":
> describes a pattern of behavior that psychologists and social workers noticed when they were working a clinical setting with children who had been sexually abused, and some of these behaviors at the time were troubling.  They didn't understand where they were coming from.  What they were puzzled by is why doesn't the child just come right out and report it, why is there a delay in reporting, why is it that sometimes a child changes the story, why does a child sometimes recant, saying, "Oh, no, it didn't happen," why do they do all these things, and studies started coming out in the early 1980's concerning this phenomenon, and basically they found that the phenomenon of those behaviors were based on the relationship the child has to the parent figure, whereas they are emotionally and physically dependent on the parent figure, and they feel a certain amount of powerlessness because they have this big adult near the kid, and being in that situation and being that adult figure, it leads them to the accommodation part, and that's why the word accommodation is in the title.  They tend to either let the abuse continue, or let it remain secret, or if they do disclose, I have worked in cases, it's very frustrating for law enforcement, where they will recant.

Dr. Revis was also permitted to testify as to whether Alisha "exhibits any behaviors which are consistent with child sexual abuse accommodation syndrome." Including whether she had "some inconsistencies in her story," or the "deep sense of betrayal" said to be associated with that "syndrome."  Judge Clevenger drew the line only when Dr. Revis started to opine as to whether particular details to when Alisha testified could have been a dream, or based on her behavior coming to the courtroom.

F) (1)     Ground Six:    THE MILITARY JUDGE ERRED IN PERMITTING TRIAL COUNSEL TO MAKE IMPROPER ARGUMENT ON BOTH FINDINGS AND SENTENCE.

   (2)     Supporting Facts:  The organizing principle of the government's case on the child sex offenses was to label and stigmatize the Petitioner.  That principle was clear from the outset; in his opening statement, trial counsel intoned, "Prepare yourselves, Mr. President, members of the panel, to enter the bizarre world of the accused's sexual life."  The trial counsel's closing was in much the same vein, and began: "Mr. President, members of the court, what you have seen and heard over the past 2 days is the development of a child molester, a preferential sexual offender and how he took his first victim.  Now you have been through the bizarre world of the accused, and you can judge him accordingly."

G) (1)     Ground Seven:  THE CHARGES AGAINST THE PETITIONER AT TRIAL WERE UNREASONABLY MULTIPLIED AS WELL AS MULTIPLICIOUS.

   (2)   Supporting Facts: The facts pertinent to this assignment of error are apparent from the charge sheet and bill of particulars.

H) (1)   Ground Eight: THE PETITIONER CONTENDS THAT THE GOVERNMENT VIOLATED ITS OBLIGATIONS UNDER *BRADY*, AND ITS PROGENY BY WITHHOLDING FAVORABLE AND IMPEACHING EVIDENCE FROM HIM.

   (2)   Supporting Facts: In a Memorandum for Record, dated 25 July 2000, drafted by CPT Jonathan R. Hirsch, trial counsel during the Petitioner's General Court-Martial, government witness, Mrs. Cassandra Hammer, relays to the trial counsel her doubts concerning the Petitioner's case. Specifically, Mrs. Hammer continues to state in this memorandum to the trial counsel that "two months after Mrs. Daniels arrived in the Hammer household, the victim expressed doubts concerning what had happened." In paragraph 3 of this memorandum, the trial counsel states, "Based on this information, and the lack of a dependable witness to the crime, I believe charging SPC Daniels with sodomy is unwarranted at this time."
In a Request for Discovery, dated 18 September 2000, the Petitioner's trial defense counsel, CPT Crystina M. Kowalczyk requested "Under R.C.M. 914, any previous statements, written or oral, made by a witness the prosecution intends to call on the merits or in the pre-sentencing phase, and the anticipated subject matter of that witness' testimony" and "Any information or evidence known to the Government through the exercise of due diligence, which is exculpatory in nature or otherwise favorable to the accused for the merits or on sentencing." This includes any relevant impeachment evidence as well. This also includes exculpatory evidence contained in law enforcement files. The Petitioner's trial defense counsel also made a "Request for Production Witnesses and Evidence" to the Article 32 Investigating Officer on 14 November 2000, in requesting that "Any oral or written statements made by any other purported witnesses to these charged offenses, either directly or third party, which may, as evaluated by the defense, tend to incriminate or exonerate SSG Daniels from any or all of these charges." Both the Request for Discovery and Request for Production Witnesses and Evidence were made *after* CPT Hirsch's Memorandum for Record was created.
There were eleven separate discovery disclosures made by the government, none of which mentioned the above named Memorandum for Record, nor was it introduced at the Petitioner's court-martial. The government's failure to disclose this information deprived the Petitioner of a fair trial.

18) Do you have any petition, application, motion appeal now pending in any court, either state or federal, regarding the conviction under attack?

   Yes [ ]   No [X]

   If "Yes", state the name of the court, case file number (if known), and the nature of the proceeding:
   N/A

19) a)   State briefly why you believe that the remedy provided by 28 U.S.C. § 2255 (Motion to Vacate Sentence) is inadequate or ineffective to test the legality of your detention: <u>28 U.S.C. § 2255 is inapplicable to military courts</u>.

   b)   Did you seek administrative relief (if available)?

   Yes [ ]   No [X]

   If your answer is "Yes", describe the procedure followed and the result. If your answer is "No", explain why you did not seek administrative relief: N/A, 28 U.S.C. § 2255 is inapplicable to military courts.

## STATE DETAINERS

Complete the following questions only if you are attacking a detainer issued by a state court or authority based on untried indictment, information or complaint.

20) Legislative body name and location of the court or other authority issuing the detainer:

21) The name and title of the prosecuting officer for the jurisdiction of the court or authority issuing the detainer you now seek to attack:

22) What is the nature of the offense or offenses involved?

23) Have you sent a written request for a formal disposition of charges against you and notice of your place of imprisonment to the prosecuting officer and the appropriate state court of the prosecuting officer's jurisdiction?

   Yes ☐   No ☐

   NOTE: Under the Interstate Agreement on Detainers, your written request for final disposition of pending charges must be accompanied by a certificate of the appropriate official having present custody, which gives the following information:

   a) The term of confinement under which you are being held;
   b) The time already served;
   c) The time remaining to be served on the sentence;
   d) The amount of good time earned;
   e) The time of parole eligibility and any decision of the state parole agency relating to you.

24) If your answer to question 23 is "Yes", when was such notice delivered?

25) Have you complied with the provisions of the Interstate Agreement on Detainers where applicable? (18 U.S.C. Appendix)

   Yes ☐   No ☐

   Colo. - C.R.S. 24-60-501 et seq.
   Kans.- K.S.A. 22-4401 et seq.
   N.M. - N.M.S.A. 41-20-19 et seq.
   Utah – U.C.A. 77-65-4 et seq.
   Wyo. - W.S. 7-408.9 et seq.

26) Have you filed any petition, application or motion with respect to this detainer in any court of the charging state?

   Yes ☐   No ☐

27) If your answer to question 26 is "Yes", give the following information:
   a)   Name of the court and location:

b)   Nature of the proceeding:

c)   Issues raised:

d)   Did you receive an evidentiary hearing on your petition, application or motion?

        Yes ☐    No ☐

e)   Result:

f)   Date of result:

g)   Did you appeal the result to the highest state court having jurisdiction?

        Yes ☐    No ☐

h)   If your answer to (g) is "Yes", give the name and location of the court where the appeal was filed, the result, the case number, citation and date of court's decision (or attach a copy of the court's opinion or order).

i)   If your answer to (g) is "No", explain briefly why you did not:

j)   Have you filed more than one petition or other action in a state court or any type of action in a federal court with respect to this detainer?

        Yes ☐    No ☐

If your answer is "Yes", give the information required by questions 27(a) through 27(i) for each action. Use the reverse side of this page for your answers.

28) State concisely why you believe the detainer is invalid. You should also state the relevant facts concerning your claim, including places and dates. You may attach up to two additional pages to complete your answer.

Wherefore, petitioner/movant prays that the court grant him such relief to which he may be entitled in this proceeding.

No Attorney – Filed *Pro Se*
Signature of Attorney (if any)

                                                            *[signature]*
                                                      Signature of Petitioner/Movant

                                                          Lloyd Daniels 77357
                                                          1300 N. Warehouse Road
                                                          Ft. Leavenworth, KS 66027-2304
                                                                   Petitioner's full address

## DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares (or certifies, verifies, or states) under penalty of perjury that he is the petitioner/movant in the above action, that he has read the above pleading nd that the information contained therein is true and correct. 28 U.S.C. § 1746. 18 U.S.C. § 1621.

Executed at      United States Disciplinary Barracks      on  /  February  , 2008.
                        (Location)                                             (Date)

                                                                                  (Signature)